## BREWSTER v. KABLE NEWS CO.
### No. 252.

Circuit Court of Appeals, Second Circuit.

March 30, 1945.

Samuel A. Fried, of New York City, for defendant-appellant.

Carl E. Peterson, of Cedarhurst, N. Y., for plaintiff-appellee.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This is an action to recover installments due since August 17, 1939, upon a contract made by defendant in 1934 for weekly payments to plaintiff during her lifetime. Payments having been made under the contract until March 11, 1937, plaintiff brought an action in the state courts in which she recovered a judgment covering installments until August 17, 1939. Brewster v. Kable News Co., 289 N.Y. 246, 45 N.E.2d 426, motion for reargument denied 289 N.Y. 849, 47 N.E.2d 445. The present action was instituted in the state court and was removed to the district court below by defendant, an Illinois corporation. The defendant in extensive defenses in its answer attempted to meet the plaintiff's claim that the essential issues herein were adjudicated in the previous action. But on cross-motions for a summary judgment, the District Court agreed with plaintiff and gave summary judgment to her for the installments due. On this appeal defendant reiterates its contentions that the prior litigation did not settle the issues against it.

Plaintiff, having an interest in the publication of two magazines, "Motion Picture" and "Movie Classic," entered into an agreement in 1933 with various parties for the publication of the magazines, the publishing corporation then agreeing to pay her $200 a week, subject, under certain conditions, to be reduced to $100 a week. On November 14, 1934, this corporation sold out its assets to defendant by a contract in which, among other things, defendant promised to pay plaintiff either $60 a week for the next five years or, at her option, $40 a week during her life, with the proviso that if defendant or its successors or assigns discontinued the publication of both the magazines "by reason of the same being unprofitable ventures," the payments should cease. The litigation between the parties turns upon the interpretation of this proviso—stated in full in the margin.[1]

---

[1] "* * * provided, also, however, that should the Buyer and/or its successors or assigns discontinue the publication of both of the magazines known as 'Motion Picture' (magazine) and 'Movie Classic' (magazine), or any other movie fan magazine or magazines having any one or both of said magazines or titles as integral parts thereof or predecessors thereof, by reason of the same being unprofitable ventures, that then and under such circumstances any and all obligations to pay said weekly amounts shall cease and terminate during the cessation of such publications."

Plaintiff accepted the second alternative of the contract and also payments made until 1937 by a Minnesota corporation, which defendant had organized pursuant to the contract for the actual publication of the magazines. But on March 16, 1937, the United States District Court for the District of Connecticut appointed a receiver to conduct the affairs of the Minnesota corporation on the complaint of a major stockholder. Under court authority the receiver published a joint issue of the magazines for three months, when upon order of the court the rights to the publication were sold to a stranger, who, with his successors, has continued the publication of the combined magazine. The substantial defense made in the prior action was that by reason of these facts the proviso to the contract was called into operation and defendant's obligation ceased. The New York Supreme Court, however, struck out the pleaded defenses and gave summary judgment for plaintiff at Special Term, on the ground that the contract was clear and unambiguous, and that the contingency of discontinuance of publication of the magazines by reason of the absence of profits had not occurred. On appeal to the Appellate Division, Second Department, this judgment was reversed by a three-to-two vote, the majority holding that two of the four defenses might be sustained because "the equity receiver and the purchaser at the judicial sale are not the successors or assigns of defendant within the contemplation of the contract." 262 App.Div. 894, 967, 28 N.Y.S.2d 849, 850.

When the case reached the Court of Appeals, however, that court unanimously reversed the judgment of the Appellate Division and affirmed that of the Special Term. In an opinion by Judge Loughran, the court stated that the "precise contingency" provided for in the contract had not occurred and that, even though the operation of publishing the two magazines had resulted in a "mounting money loss," the defendant, by purchasing debenture bonds of the new corporation, "kept the enterprise on foot" and thus "for reasons of its own, took the risk of the event whereby its only stipulated means of arresting the plaintiff's right was lost." It added, "We see no fair ground for escape by the defendant from the terms of its agreement with the plaintiff." 289

N. Y. at page 249, 45 N.E.2d 426, at page 427.

Defendant's answer herein purports to set forth three new matters not previously adjudicated: (1) That the Minnesota corporation on or before March 16, 1937, voluntarily discontinued publication of the magazines as unprofitable ventures; (2) that this same corporation filed its answer to the receivership complaint, wherein it voluntarily admitted all allegations made against it; and (3) that plaintiff released defendant from its obligations under the 1934 contract when she consented to the assumption by the Minnesota corporation of the contract duties to her. But it is quite clear that all of these facts were either definitely asserted or clearly apparent in the prior action and that no one of them affected or would affect the court's conclusion that defendant's duty to pay continued because the contingency of cessation of publication had not occurred.

The first two grounds of defense obviously come to the same thing. In fact in the prior action defendant actually pleaded that publication was continued until March 15, 1937; and defendant now claims only that, since the Minnesota corporation's answer was filed simultaneously with the receivership complaint and since it must have required a little time for its preparation, this decisive step must have taken place before the actual receivership. But all this is of no consequence. While it is true that the consent answer appears to have been omitted from the rather voluminous record of the previous state action, nevertheless that record did show that the district judge had appointed a permanent receiver at once upon filing of the complaint, indeed that on the very same day, March 16, 1937, not only did the receiver qualify, but the court on his petition authorized him to borrow money to continue the publications. As a matter of fact, this answer "joined" in the bill of complaint, which, among other things, alleged that the continuance of publication was necessary to preserve the corporation's assets. It is obvious horn book law that no permanent receiver of a corporation can be appointed on immediate presentation of a complaint which the debtor challenges, and that consent receiverships have been, to say the least, not unusual. In fact plaintiff by affidavit of her counsel, not challenged in the record, set forth that this

very contention was presented to the Court of Appeals on motion for reargument and was then rejected. 289 N.Y. 849, 47 N.E.2d 445. And finally, as we have seen, the state decision did not turn in any manner upon the voluntary or involuntary character of the receivership proceedings.

The other defense—release of defendant by plaintiff's acceptance of the obligation of the Minnesota corporation—was definitely presented in the earlier action at Special Term and no appeal was taken from the order striking it out. Hence it, too, became res judicata. One may accept defendant's claim that a later suit for further installments due under a contract does not conclude new matter not presented for adjudication in actions for earlier installments, and yet see no escape under the well settled authorities from the conclusion that every point necessary to the adjudication below was settled in the previous case. Southern Pac. R. Co. v. United States, 168 U.S. 1, 48, 49, 18 S.Ct. 18, 42 L.Ed. 355; United States v. Moser, 266 U.S. 236, 45 S.Ct. 66, 69 L.Ed. 262; Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104. We may add that were the matter res integra we should see no reason for disagreeing with the interpretation made of the contract by the New York courts.

A final claim is made that a federal court need not be bound by the state court's findings of facts. This is ridiculous. American Surety Co. v. Baldwin, 287 U.S. 156, 166, 53 S.Ct. 98, 77 L.Ed. 231, 86 A.L.R. 298.

Judgment affirmed.