THE TRAVELERS INSURANCE COMPANY, A CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8082. Promulgated April 17, 1946.

*Lillian L. Malley, Esq.,* for the petitioner.
*B. J. Long, Esq.,* for the respondent.

### OPINION.

LEECH, *Judge*: Respondent has determined that petitioner is liable as transferee of the Northwestern Telegraph Co. for $6,000 unpaid income taxes of that company for each of the years 1940 and 1941. The sole issue is whether the Federal Government is estopped from enforcing such liabilities under the doctrine of *res adjudicata* by reason of judgments rendered in certain prior litigation.

The facts have been stipulated and are so found. Only such of them as are necessary to an understanding of the issue are hereinafter set out. The petitioner is a Connecticut corporation, with principal place of business at Hartford, Connecticut. The Northwestern Telegraph Co. (hereinafter referred to as Northwestern) is, and was at all times mentioned herein, a Wisconsin corporation, with its principal office during the years 1940 and 1941 and thereafter in Hartford, Connecticut. Prior to July 1, 1881, Northwestern operated a telegraph business in several states in the United States and in the Dominion of Canada. At all times mentioned hereinafter, its outstanding capital stock was divided into 50,000 shares of a par value of $50 each.

Between 1892 and 1896, the petitioner from time to time acquired shares of the capital stock of Northwestern in an aggregate of 2,000

shares, and since that time it has held continuously, and now owns, that 2,000 shares.

On May 7, 1881, Northwestern leased to the Western Union Telegraph Co. (hereinafter referred to as Western Union), for a term of 99 years, all of its assets and property and, following the execution of this contract, possession of the property was taken by Western Union, and the lease agreement has been continuously in effect since the date thereof.

By the terms of the lease agreement, Western Union obligated itself to pay the specified rentals direct to the stockholders and bondholders of Northwestern, and after taking possession of the leased property it caused to be placed upon each certificate of capital stock of Northwestern, as required by the terms of the lease, an endorsement evidencing its obligation to make payment of dividends to the owner of such stock in the amounts provided by the lease. This endorsement was placed upon the certificates of stock owned by the petitioner.

Since taking possession of the leased properties, Western Union has used and operated them and Northwestern has been without property in its possession out of which any liability for Federal income taxes for each of the years 1940 and 1941 might be satisfied. In each of those years Western Union duly paid to the stockholders of Northwestern the sums provided by the lease contract. In each of the years 1940 and 1941, payments of $6,000 were so made to the petitioner as holder of 2,000 shares of stock of Northwestern, such payments representing dividends at 6 percent upon the par value of such stock.

For each of the years 1940 and 1941, Northwestern filed corporation income tax returns in the office of the collector of internal revenue for the district of Connecticut, reporting an income tax amounting to $36,012.24 for the taxable year 1940 and $46,265.81 for the taxable year 1941. These taxes, in each year, were computed upon a gross income consisting of the payments made as agreed by Western Union to Northwestern stockholders for those years under the lease agreement. No part of the taxes reported on these returns was paid.

On or about the 16th day of February 1944, after suit brought, a judgment for delinquent Federal income taxes and interest due from Northwestern for the years 1934 to 1941, inclusive, was entered against Northwestern in favor of the United States in the United States District Court, Civil No. 1028, in the total sum of $286,445.49, plus $22.20 costs, which judgment includes the sum of $36,012.24 and $46,265.81 owing by Northwestern for the taxable years 1940 and 1941. This judgment was not appealed and has become final. Execution thereon was duly issued and returned unsatisfied and no part of the judgment has been paid.

Petitioner pleads *res adjudicata*, basing such plea on a decree entered in the District Court of the United States for the Southern District of New York on January 10, 1927, dismissing the amended bill of complaint in a suit, No. E 28–402, entitled *"United States of America v. The Western Union Telegraph Company, et al.";* the mandate of the United States Circuit Court of Appeals for the Second Circuit affirming that decree, entered October 14, 1931; a judgment entered in the United States District Court for the Southern District of New York on October 8, 1943, granting summary judgment and dismissing the complaint on the merits in an action, Civil No. 21–539, entitled *"United States of America, Plaintiff*, v. *The Western Union Telegraph Company and Northwestern Telegraph Company, Defendants";* and the order of the Circuit Court of Appeals, dismissing the appeal upon the stipulation of the parties, entered August 28, 1944.

There is presented here the sole legal question of whether respondent is estopped by the judgments set forth in our findings of fact from asserting a transferee liability against petitioner, a stockholder of Northwestern, for the unpaid Federal income taxes for the years 1940 and 1941 of the latter corporation. The difficulty here appears to arise from the application of the well established principles governing that phase of the doctrine of *res adjudicata* known as estoppel by judgment. This rule applies if, and only if, the controlling fact or matter in issue here is the same as that actually litigated and decided in an earlier action between the same parties or their privies. *Cromwell* v. *County of Sac*, 94 U. S. 351; *Southern Pacific R. R. Co.* v. *United States*, 168 U. S. 1; *United States* v. *Moser*, 266 U. S. 236; *Tait* v. *Western Md. Ry. Co.*, 289 U. S. 620. Does there exist here the essential identity to parties and matters actually litigated and adjudged in the prior proceedings? An examination of the decrees upon which petitioner relies discloses that the judgment or decree entered October 8, 1943, was one of dismissal of the complaint upon the merits (52 Fed. Supp. 553). This judgment sustained a plea of *res adjudicata* raised by the defendant, Western Union, by preliminary motion for summary judgment made prior to the joinder of the issues set forth in the complaint. No issue of fact was litigated or adjudged. Hence it is necessary to revert to the prior judgment entered January 10, 1927 (19 Fed. (2d) 157), affirmed October 14, 1931 (50 Fed. (2d) 102), to ascertain the scope of the issues litigated and decided and the identity of the parties. Since this judgment or decree entered was merely one of dismissal of the complaint on the merits, we are required to search the pleadings and the opinion of the court to determine the issues raised and the matters adjudged. *Bates* v. *Brodie*, 245 U. S. 520; *Vicksburg* v. *Henson*, 231 U. S. 259; *United Shoe Mach. Co.* v. *United States*, 258 U. S. 451. An examina-

tion of the issues raised and submitted and which the court intended to decide is made clear by the opinion of the Circuit Court of Appeals for the Second Circuit, affirming the judgment (50 Fed. (2) 102). That court said:

Two questions are presented: (a) Whether such payments by the Western Union Telegraph Company to the shareholders constitute income of the Northwestern Telegraph Company and are subject to a tax; and (b) whether the appellant could enforce a lien upon the annual payments, for the taxes duly assessed, against the Western Union Telegraph Company.

We think the pleadings and the District Court's opinion establish that the issues as above stated were the only ones presented upon which the court intended to adjudicate. In passing, it should be noted that petitioner was only a nominal party in its capacity as a stockholder. No relief was sought against the stockholders, either individually or as stockholders, nor was any affirmative relief prayed for against Northwestern.

We think it is too clear for controversy that neither of the issues tendered in the prior proceeding, which were litigated and adjudged, is in controversy in the instant proceeding. Petitioner here concedes Northwestern is liable for Federal taxes upon the amounts due and to become due under the lease between it and Western Union, so that issue is not now being relitigated. The second issue, whether respondent had or now has any equitable lien upon the funds in the hands of Western Union for taxes assessed against Northwestern, is not now in controversy. Western Union is not a party here, nor is any direct or derivative right of Western Union here in question. The issue submitted here is whether the respondent is entitled to enforce a transferee liability against this petitioner as a stockholder of Northwestern. This proceeding is an independent statutory remedy against the petitioner as an individual.[1] This question has never been presented or litigated in any prior proceeding.

It may be that respondent could have asserted a claim against the stockholders of Northwestern, as transferees in the prior proceedings, but he did not do so. A judgment is not conclusive of those matters as to which party had the option to litigate but did not in fact litigate. *Larsen* v. *Northland Trans. Co.*, 292 U. S. 20; *Mercoid Corporation* v. *Mid-Continent Co.*, 320 U. S. 661, 667. We do not think this record supports the petitioner's plea of *res adjudicata*. The respondent is sustained.

*Decision will be entered for the respondent.*

---

[1] Sec. 311, I. R. C.